Good morning, Your Honors. May it please the Court, my name is Trevor Grimm, appearing on behalf of defendants and appellants John Franklin, Ryan Bergner, Gilbert Duran, and Gabriel Gonzalez. I'd like to focus our argument on what we view as the most significant portion of our brief, which is the propriety of giving a Fourteenth Amendment, or a Fourth Amendment, with reasonableness under the circumstances instruction, versus a higher standard under the Fourteenth Amendment. And as we see it, the parties agree that the Fourteenth Amendment applies the excessive force context for a holdover pretrial detainee. Do you have a circuit court case that stands for the proposition that the instruction given was reversible error? Not the specific instruction. But what I did find, and we can submit this in a 28-J memorandum or letter, there is a case, Henderson v. Young, a Northern District of California case, opinioned by William Fletcher, and it's a February of 28 case. I think we're just asking, or at least I was just asking about circuit court cases. Yes, not on that specific instruction. How do we get around Gibson, which has very broad language saying that a pretrial detainee, the excessive force should be analyzed under the Fourth Amendment? That was building on, I guess it was Pierce County. Yes, I believe that. Pierce v. Multnomah County. I believe that both Gibson and the Lawley case, which, by the way, Judge Fletcher's opinion discusses, holds that once a detainee is found to be legally in custody, based on probable cause, that the Fourth Amendment's protections end. In other words, Gibson says that once, I'm sorry, Pierce, upon which Gibson and Lawley rely, says that the Fourteenth Amendment protections begin once a probable cause determination has occurred. And where is that in Gibson? Your Honor, I don't have the exact citation to Gibson, but the cite in Pierce is 76F3rd at 1043. Well, I know Pierce says that, but then Gibson goes on to say that we've determined that the Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention. And I didn't see it put a limitation on that. It just uses that very broad language. So even though the case itself had to do with pre-arraignment detainees. Well, that's exactly the limitation. But we didn't make that explicit in that opinion. I believe the fact that we were, it was known that we were dealing with a pretrial detainee who had not yet been subjected to a judicial determination of probable cause. The blanket statement that the Fourth Amendment applies makes sense. But going underneath, based upon the facts, and given that the plaintiff was, or the criminal defendant was not, had not been yet been arraigned or decided that, it had not been decided that there was probable cause, a judicial determination of probable cause. Counsel, I don't understand why that matters. And there are two branches of what I don't understand. One is, I don't see why the standard after confinement would be more lenient to the guards. It seems to me that the police need considerable discretion when they're trying to subdue somebody out on the street. But once he's behind bars and under surveillance and under whatever kind of restraints are necessary and in jail clothes, he's, they probably don't need as much restraint in many cases. The second thing I don't understand, and this is really probably more important, is this was a civil case. It went to a jury trial. Judges are granted broad discretion in the formulation of jury instructions. Even if we would quibble with the instruction, I can't see how on the facts of this case it could have made any difference. I mean, are you saying that under some instruction it's okay for a jail guard to bash somebody's head into the toilet or tie him to a bed frame for two days? That some different formulation of the instruction is going to make that okay? I don't see it. So the first question, Your Honor, there already is a distinction. Assuming the Fourteenth Amendment standard, which we are applying for, in other words, that in order for excessive force to be found, the force has to amount to punishment, assuming that standard is not existing, can you just take the Fourth Amendment standard, which applies up almost uniformly in the cases, applies up to the point when the person arrested has been subject to arraignment or a probable cause decision? That person is in custody. He is in a facility where he's got the cameras and the guards, et cetera. But there's also a distinction within those same facilities when you have an Eighth Amendment cruel and unusual punishment standard. So there is a difference. Do we have a case, and I didn't find one, that addresses the standard for excessive force in that narrow period between the probable cause hearing and when they're convicted? Is there a case that addresses that? You mean specifically on the facts? Because there is the United States Supreme Court case Graham v. Conner. Okay, that was with a free citizen was what they were talking about in Graham. Right, but it did have the language. I think in Graham they were trying to determine which constitutional provision applied to uses of force. And that case dealt with, you're right, the circumstances of force upon an arrest. And it was the Court was trying to definitively say that it's the Fourth Amendment standard that applies during the course of an arrest. However, the language also is in there that it is clear that it's a Fourteenth Amendment, which applies to a post-arraignment holdover detainee. But weren't all those cases, I think what the opposing counsel says, are conditions of confinement cases? There isn't really an excessive force case? Graham v. Conner was not conditions of a confinement case. However, the Bell case, Bell v. Wolfex, yes. And Redmond are not in this decision. And Redmond, because it was not the police officer's direct use application of force, but rather where he was going to put the plaintiff or the defendant, the arrestee. So is that an open question in the Ninth Circuit? I believe so. I mean, to the extent that there's no model pattern instruction on a Fourteenth Amendment standard, I believe it is an issue which should be addressed by the Court. And even Patrick Walsh, Judge Walsh, Magistrate Walsh. When you say Fourteenth Amendment, you mean incorporating the Eighth Amendment standard, punishment. Well, the Eighth Amendment standard, you can use as much force as long as it doesn't amount to cruel and unusual punishment. Right. So we're giving the police officers more latitude dealing with convicted prisoners. I'm just trying to find out what you mean by Fourteenth Amendment. You mean Fourteenth Amendment prohibits force which is punishing. Fourth Amendment prohibits force which is unreasonable in the circumstances. That's what you mean by Fourteenth. Yes. Okay. And but I don't want to, in any circumstances, argue that we're not, that force, it has to be considered reasonable. It's just that reasonable, what's reasonable has to be calibrated toward the type of individual with which the police officers are appealing. I have two problems here. One is you haven't answered the second part of my question. Under Rule 52, as I recall, we're not allowed to reverse a civil, a judgment in a civil case unless the claimed error would have made a difference. And in this case, taking the evidence favorably to the prevailing party at the jury trial as we must, I can't see how it would. Well, in the context of the facts of the case, you know, I recall the, I think you just referred to bashing the client's head against the floor. Bashing his head on the toilet. That, if you consider it under the, an instruction that was said, that would have said in order for us to be accessible, excessive, it has to amount to punishment, the jury could have taken into account more, it could have given the police officer more deference, more latitude in the type of force that was being used against the client. Because whether or not it was a... What legitimate, they can't punish him at all. A jail is just a hotel that you're not allowed to get out of if you're a pre-trial detainee. Right. No punishment's allowed in jail because the person hasn't been convicted. It's kind of like you're at the Ritz Carlton except you can't open the door. It's because he hasn't been convicted of anything. So I don't understand how the Eighth Amendment has anything to do with anything. The management of people in jail, I can't remember the exact formulation, but it's going to be some sort of reasonable force standard, whether we fool around with Graham v. Conner or whether it's something else. You know at the end of the day it's going to be the Supreme Court saying what's reasonable in the circumstances to manage the jail. And I don't understand what argument there is, that if the jury had been given virtually any instruction along those lines, they would have said, oh, well, yeah, you need to bash those guys' heads in the toilet now and then show them who's boss. Well, I think that starting off at the beginning... Tie them to their beds and let them lie in their urine. There is a difference because the, first of all, if we don't have a distinction between the Fourth Amendment and the Fourteenth Amendment, what's the point of considering them under different constitutional amendments? Tell me any formulation of words that could have been used where there would have been a different result at the jury trial. In order for Plano to prevail on his claim of excessive force, you must find that the amount of force used amounted to punishment. Whether or not... Does the jury's finding that the defendants acted with malice, oppression and reckless disregard seem to foreclose the argument that it wasn't? And I read that in Plano's brief and I, or Pele's brief. I disagree. And I think the way we formulated our instruction, as you've seen in the record, perhaps wasn't ideal because it included a subjective element. However, the reason we included that in the verdict form, the language you decided, was for a finding of punitive damages, which does require, you know, it requires a subjective intent. And, you know, but I don't think an instruction on the amount of force should include a subjective intent. And so, in other words, just because on the verdict form itself, as opposed to the jury instruction, you have that subjective intent. You can't bootstrap the instruction up into the verdict form. If you have the right verdict, I mean, the right jury instruction, you don't get to that question. Because if they don't find liability for excessive force, you never get to the issue of whether there were punitive damages. And that's the only time that you address the subjective element. But given that the jury did make that finding, doesn't that further Judge Kleinfeld's point that there was overwhelming evidence that this was not reasonable under the circumstances, even under a pretrial detainee standard? Well, that's, I believe that as people progress throughout the legal process, first there's the arrest. Okay. There's been no judicial termination. We treat him, that arrestee, that person, has greater rights, and the police officer's ability to use force is more restricted. After there's a judicial termination of probable cause, there's more certainty that this person, in fact, committed the crime, and there should be a different standard, just as there is after a person is convicted of a crime, where the officers have free range and latitude to use force, unless it amounts to cruel and unusual punishment. So it's a continuum. In the cases, I would like to submit them in a 28-J letter, so that you can see that the district courts, and three of them, the Northern District of California, are struggling with this very issue as to what amendment applies and what the amendments mean. And specifically in the Henderson case, dealing with the jury instruction, Judge Fletcher's opinion or its order regarding jury instructions specifically says that under the 14th Amendment, it's almost the same as the Eighth Amendment standard, except that in the pretrial context, they may not use the force may not be used as a form of punishment. It seems like they are recognizing the United Circuits without a definitive standard under the 14th Amendment, and they are dealing with it in these district court cases. Could you respond briefly on Gomez's rape conviction? I had trouble following the argument about the evidentiary objections, and it sounds as though you wanted to introduce more evidence about when this jail guard was a cop and was raping girls in the back seat of his police car or something. Well, we certainly didn't want to do that. I think that the appellees, the plaintiffs would have wanted to. My client, in fact, was a police officer who was convicted of three counts of rape under color of authority, sexual assault under color of authority. We also had a previous conviction for Mr. Jimenez, and what Judge Walsh did was he allowed us each to get in one felony conviction, sanitize, such is the nature of the conviction. You let them both in, but he didn't let the jury hear any details, right? Correct. Did you preserve that issue because the opposing counsel says it wasn't preserved? Your Honor, I think that I did not write the brief, and I'm not trying to cast any aspersions on the drafter. I believe that perhaps the logic in our argument, it sort of confused the introduction of two previous felony convictions with the 404B evidence which the plaintiff's appellees were able to adduce at trial, and those were evidence of other instances of conduct by my client's police officers. They turned out not to have been held liable, and I'm not sure I would pursue that further here. Thank you, counsel. Thank you. Counsel. Good morning, Your Honors, and may it please the Court. I am Rochelle Wilkinson. I'm here at counsel's table with Lead Trial Counsel Emilio Gonzalez on behalf of FLA Anthony Jimenez. I will turn first to the jury instructions issue since that is, as the appellant argued, the key issue on appeal. We, of course, I agree with Judge Kleinfeld that harmless error really should resolve this in favor of an affirmance. We think that the issue It's really tempting to write some form jury instruction that the courts can use for pretrial detainees, but I'm having trouble seeing what would make a difference. I agree with the Court. Even if the Court were to go there and to write a jury instruction for the courts used below, and certainly Judge Walsh below did say he wishes that there were a jury instruction in the Ninth Circuit, although he hopes it doesn't result in irreversible in this case, in order to do that, the Court should still get to harmless error and conclude that there was no harmless error here. I think that an appellant has really set up kind of a false analogy by saying that punishment would be different. If you look at Bell v. Wolfish, they talk about the reasonableness of the jailer's actions. That was a prison management case. And that's one of the cases that's where the courts have first derived the language pretrial detainees can't be subjected to punishment. And this was a holdover. This was after a probable cause determination. Correct. In Bell v. Wolfish, it was conditions of confinement. There were pretrial detainees that were mixed in with regular, with convicts. The Court talked about, of course, conditions of confinement and made some reference to excessive force cases and said it is clear, or excuse me, the it is clear language came from Graham, that it was, there is, pretrial detainees can't be subjected to punishment. I don't think that the Court was establishing that as a standard. I think that the Court was establishing that as a floor. Ram v. Conner, which was an unreasonable search and seizure case, a Fourth Amendment case, says it is clear at a minimum that pretrial detainees, it doesn't have the at a minimum language, but it is clear that pretrial detainees cannot be subjected to punishment. In Graham v. Conner at footnote 16, the Court noted that it has not established the standard for pretrial detainees. And so it made clear that in Bell v. Wolfish. I don't understand why the Eighth Amendment would have anything to do with it. I mean, the Red Queen in Alice in Wonderland punishes first and fries them later. Right. But I thought we did it in the opposite order. Agreed, Your Honor. And the question is not whether it's cruel and unusual punishment, which is, of course, the Eighth Amendment standard. But we agree the Fourteenth Amendment establishes the standard. The question is what is the content of that standard. If the jury had been instructed on punishment, the question would still be what is the content of the punishment standard. If I could just interrupt you for a moment. Is it correct that for that slice, for the pretrial detainee after probable cause, a hearing, but before conviction, that we at the Ninth Circuit or the Supreme Court has not set out what the standard is or what the content is of the substantive due process standard? The Court addressed that in that factual situation in White v. Roper, which is a 1990 case, which we have cited in our briefs. That case involved both conditions of confinement and excessive force. It was a pretrial detainee in that. Didn't it use the Johnson v. Gwyth standard, which the Supreme Court had just rejected in the grant? That is correct. That case is a little odd. It is a little odd. And it didn't establish the standard for the Ninth Circuit. We think that while Pierce clearly had limiting language talking about the kind of four different, in that continuum, the four different steps, arrest, pre-arraignment, pretrial detainee, post-arraignment pretrial detainee, and then convicted criminal, the Court has since built on Pierce and Gibson, as Your Honor mentioned, talking about a standard for pretrial detainees. The Fourteenth Amendment applies to both pre-arraignment and post-arraignment pretrial detainees. The question is, what is the level, what is the content of the Fourteenth Amendment standard that should be applied? And as Judge Kleinfeld suggested, there is no constitutional distinction that is triggered by arraignment. The Fourteenth Amendment is to say the Fourth Amendment applies to the arrest, as Graham said. And the arrest situation continues through the time that the person is being held before, being held over, I guess in that case a woman, before she was bound over with the probable cause hearing. And Gibson, although it doesn't make that point, clearly the person, the defendant in that case or the person in that case, is in the same situation. And so there you can see why the Fourth Amendment makes sense, because it's a continuation of the arrest, which Graham has told us is analyzed under the Fourth Amendment. Once you're in a Bell v. Wolfish situation, though, I don't see why that that sort of objective reasonableness, which comes from the Fourth Amendment, would be applicable. And maybe you could explain that. Well, there are two points, I guess. A reasonableness standard does apply under Bell v. Wolfish. In talking about punishment, the court talked about whether or not, and of course that's a conditions of confinement case, so that's different. But the court talked about whether or not the actions of the prison are reasonable. Now, there it's talking about policies and things like that, but it's focusing on whether or not the actions are reasonable. And that's the question. But the standard they use isn't that it can't amount to punishment. The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment, and that's really as far as they went. Well, they go on, though, Your Honor, to talk about in evaluating what the prison has done, whether or not it is arbitrary or capricious, whether or not it is – it specifically talks at 538 to 539 about whether or not it is reasonable and kind of the flip side of whether it's arbitrary or capricious is whether it's reasonable. If it's unreasonable, it is arbitrary or capricious. And so the Court has kind of already said that reasonableness is the inquiry. But – and then the second point is, arraignment doesn't – the Court has – this Court has already concluded that the Fourteenth Amendment standard, at least in the pre-arraignment scenario, should be – should import the Fourth Amendment standard. And certainly in Pierce, it talked about there not – there not yet being an arraignment and the individual not yet being bound over. But I can't see a reason from a constitutional perspective, when we're talking about the Fourteenth Amendment, for the protections for the prisoner to differ following arraignment. It's not clear why the prisoner should receive a lesser degree of protection than a pretrial detainee who has not yet been arraigned, because the arraignment is not a – it's – it doesn't have a – an impact from a constitutional perspective, if that makes sense. Kennedy. One of the things you do at arraignment is consider whether there's probable cause to proceed. It's before the preliminary hearing, but at arraignment, there can be a motion to dismiss the complaint of the indictment on the grounds there's no probable cause. So once you're past arraignment, I see a continuum of dangerousness of the defendant. One thing is detainment. When he's arraigned and he pleads not guilty but there's probable cause to hold him, he's a little bit more dangerous than when he was arrested. In preliminary hearing, you find there's probable cause and he's bound over, he becomes more dangerous. Then he's tried and convicted, he becomes even more dangerous. But what I don't see is that the dangerousness of the – of the inmate allows any punishment along the way. That's what I don't see. I guess that's the point I was trying to make clumsily, that there is no – the rationale is that the – through those progressive levels, the courts have decided that he is more likely guilty. He is more likely at failure. To try to escape. But that doesn't matter from a constitutional perspective because those are just steps in the process. And here, the facts of this case really highlight why it shouldn't matter. Because one of their arguments is in the jail setting, in the custody setting, the prison guards need to give more deference so that they can put down uprisings, they can protect the other prisoners, they can make sure that nothing happens that can't be controlled. But here, in each of the three instances in which Mr. Jimenez was subject to excessive force, he was in a controlled environment. He was – the facts were really far more analogous to the holding cell, the controlled environment that they're talking about that warrants a less – Well, to me, like, the prisoners were setting him up for this. Like, he was the retarded, crazy guy and everybody enjoyed picking on him, actually. The jury certainly agreed with Mr. Jimenez's – I mean, the jury concluded that Mr. Jimenez had been subject to excessive force. And they agreed with – Is there any reason to go beyond a Bell v. Wolfish kind of approach that has to be reasonably related to a legitimate government objective? The objective is confinement and order in the jail. It can't be punishment. Restraints that are reasonably related to the institution's interest in maintaining That's kind of a point that they're arguing that – Is there anything fancier than that that we need? I don't – I mean, there needs to be some content. But once you give – the objectively reasonable standard provides the content. And the Court here provided some factors that do help the jury define the conduct and do help the jury determine what they need to be considering in evaluating this conduct. And whether or not those factors can be set as a norm within the Ninth Circuit, I don't know. They are – we – they are taken from the Fourth Amendment model jury instruction. Their factors from the Eighth Amendment model jury instruction were quite similar. Tell me, just out of curiosity, I'm wondering if any kind of Fifth Amendment due process incorporated through the Fourteenth could have anything to do with it. I was thinking about Rochin versus California. But it's – and frankly, I was thinking that some of what this guy got subjected to sounds nastier than what the newspapers say about Abu Ghraib and Guantanamo. At some point, is there some kind of Fifth Amendment incorporation, or does it matter? Your Honor, I have read Rochin. I don't know the answer to that specific question, distinguishing between the Fifth Amendment and its importing into the Fourth Amendment. So I'm not prepared to respond to that. I apologize. But I guess the point is, if you look at the content of the punishment standard that they – that they are arguing for, it really is not a heightened standard because the content is reasonableness. And what they're arguing for is that the – the prison guards need to be allowed to act unreasonably in these circumstances. And while we don't think that should be the rule under any circumstances, we think on the facts of this case, particularly where he was segregated, where he was – Kennedy, their proposed instruction varied from reasonable conduct in two particulars that are really important. The mental element was not simply unreasonable force, which could be negligence. It was the defendant acted with deliberate indifference. That sounds to me like more reckless or intentional act. Secondly, and applied a degree of force to plaintiff that amounted to punishment. So there's a – there's a – there's a quantum difference between reasonable care under Wolf v. Belfish and – or Bell v. Wolfish and the proposed instructions that the defendant gave. Well, actually, I think if you look at Bell v. Wolfish and it talking about how you define – it talks about how you define punishment. And that focuses on whether or not the government's actions are reasonable. If the government's actions are arbitrary or capricious, then they can be – then the Court may infer that they are punitive, that the government is acting in a punitive manner. If, on the other hand, the government's actions are reasonable, and the Court specifically uses the term reasonable at 538 to 539, then they are not punitive. The government has a legitimate reason for those actions. The Court, however, said that a cavity search of persons who – where there was no suspicion of them at all was reasonable in light of the institutional concerns. So it's not a particularly heightened standard. And the Supreme Court has been fairly consistent that what's reasonable once somebody is in a detention facility as a pretrial detainee is a fairly low level. I mean, I think the force involved here might be – might not even succeed in an Eighth Amendment context, but I'm not sure that we can say it's the same standard that the Court upheld in Graham for excessive force under the Fourth Amendment. I would agree with that, but that's why the jury was instructed to look at varying factors, and the conditions in which defendant was found him – or in which defendants found themselves dealing with plaintiff are relevant. They – appellants argued that they were not permitted to argue about the conditions of the prison, the conditions of confinement. But that's not true. The jury instructions allowed them to do that, and then defendants did, in fact, argue that you have to look at what the guards were dealing with at this point in time. If I might respond briefly to Judge Baez's point that deliberate indifference is a different standard, that is correct, but we would submit that deliberate indifference, A, it's – it was met by the finding that punitive damages were – were awardable as against each of the three defendants, and B, deliberate indifference, as the Court mentioned in County of Sacramento v. Lewis, really entails a – a intent. It's – it's not a standard that is readily applied to a circumstance like this, because it contemplates some policymaking. And so there, the Court refused to apply a deliberate indifference standard in a fourth amendment. Kennedy. Do I understand that you say deliberate indifference was met by the punitive damages? No, I don't think you meant that. By the action which allowed the finding of punitive damages. That is correct, Your Honor. I apologize. The Court in County of Sacramento v. Lewis was addressing not a deliberate indifference claim. It was addressing whether or not that standard should be imported back into the – the motorcycle chase there and the Fourteenth Amendment claim at issue there. But in doing so, it made clear that deliberate indifference just really doesn't apply in these kinds of situations where it's a – it's not a policy or a practice where it's not a – a thought-out course of conduct. If the Court has other questions, I'll address the other issues. Thank you, Counsel. Thank you, Your Honors. I thought we ran through the time, but I don't recall. A minute over. Thank you, Counsel. I was a red light. I'm sorry. A few minutes. Franklin is submitted, and you're adjourned for the day. Thank you. All right.
judges: Kleinfeld, Bea, Ikuta